UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>D5- HASNA BASHAR IWAS,<br><br>    Defendant. | Case No. 18-20769<br>Honorable Laurie J. Michelson |

**ORDER ON DEFENDANT'S OMNIBUS MOTION IN LIMINE [151]**

To enable the parties to prepare for trial, the Court issues the following preliminary ruling on Defendant Hasna Iwas' omnibus motion in limine. (ECF No. 151.) There are, however, issues pertaining to the scope of admissible pharmacy and prescription data that will need to be evaluated and ruled upon during the trial and with the benefit of greater evidentiary context.

### I. Introduction

Hasna Iwas is a pharmacist who owned and operated Beacon Pointe Pharmacy in Grosse Pointe Park, Michigan. She is charged in a multi-count second superseding indictment with conspiracy, unlawful distribution of controlled substances, and maintaining a drug-involved premises, arising out of an alleged drug diversion scheme, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(1). (ECF No. 77.) The government alleges that, for many years, Iwas filled controlled substance prescriptions, from several different doctors, that were written without medical

necessity and outside the scope of usual professional practice, primarily in exchange for cash. (*Id.*)

Under 21 U.S.C. § 841(a), it is unlawful for any person to "knowingly or intentionally" "manufacture, distribute, or dispense . . . a controlled substance," "except as authorized." Pharmacists are authorized to dispense controlled substances. A prescription is authorized—and thus it lies outside § 841(a)'s prohibition—when it is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

The Supreme Court recently held in *Ruan v. United States* that the "knowingly or intentionally" mens rea requirement applies not only to the "manufacture, distribute, or dispense" requirement of § 841(a), but also to the requirement that defendant's acts have not been "authorized." 142 S. Ct. 2370, 2375 (2022). As the Sixth Circuit has explained:

> In practice, this means the "except as authorized" clause works like an additional element: "[O]nce a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." Stated differently, if a defendant produces any evidence that he or she had statutory authorization to dispense or distribute the controlled substances underlying his charges, then the prosecution must show beyond a reasonable doubt "that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." The Supreme Court reiterated, however, that circumstantial evidence and "objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice' are often probative indicia of a defendant's subjective knowledge and intent."

*United States v. Fabode*, No. 21-1491, 2022 U.S. App. LEXIS 31186, at *17–19 (6th Cir. Nov. 8, 2022) (citing *Ruan,* 142 S. Ct. at 2375–76, 2382); *see also United States*

2

*v. Kahn*, 58 F.4th 1308, 1316 n.4 (10th Cir. 2023) ("*Ruan* holds that an unreasonable pharmacist may not be convicted if he did not intend to act in an unauthorized way. Of course, evidence of objective unreasonableness may support a jury's ultimate finding that a defendant subjectively intended to act without authorization."). As the government puts it, "[t]he more outside the usual course of professional practice, the stronger the inference the defendant acted knowingly and intentionally." (ECF No. 156, PageID.751.)

Similarly, to convict Iwas of conspiring to distribute controlled substances, the government also must show that she knowingly agreed to fill prescriptions for controlled substances outside the usual course of professional practice. *See United States v. Noel,* No. 20-6167, 2021 U.S. App. LEXIS 33416, at * 5 (6th Cir. Nov. 8, 2021).

In sum, Iwas is correct to argue that in order to find her guilty under 21 U.S.C. § 841 (or conspiracy to violate 841(a)), the jury must find beyond a reasonable doubt that she had actual knowledge that she was dispensing a controlled substance outside the usual course of professional practice or for no legitimate medical purpose. (ECF No. 151, PageID.528.) But the jury can evaluate her knowledge against objective criteria. The government says such objective criteria includes "red flags" or warning signs with prescriptions and patterns of prescribing found in Iwas' MAPS and SRS prescription data, and that such signs and patterns can be explained through expert opinions about what a pharmacist should know based on her pharmacy training and experience. (ECF No. 156, PageID.751.) The

3

parties' dispute over the evidence that can be used to try to prove Iwas' subjective intent when she filled the prescriptions at issue is the primary subject of Iwas' omnibus motion in limine. (*See* ECF No. 151.) The main issues underpinning this motion are whether the evidence Iwas seeks to exclude are probative of (1) whether prescriptions were dispensed outside the usual course of professional practice and without a legitimate medical purpose and (2) her knowledge of the same.

Additionally, Iwas wants to argue, as part of her defense, that if the government thought she was a danger to the public, it could have revoked her DEA license.

The Court will address Iwas' sub-motions in turn.

## II. Motion to preclude admission of red flags or indicators of diversion (ECF No. 151, PageID.512–23)

First, Iwas seeks, under Federal Rule of Evidence 403, to prevent the government from introducing evidence pertaining to the issue of "red flags" or indicators of diversion. (ECF No. 151, PageID.512–23.)

As an initial matter, Rule 403 provides a balancing test for excluding relevant evidence, but only if the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "The test is strongly weighted towards admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). And importantly, unfair prejudice is not "the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Rather, unfair prejudice refers to evidence that has an

4

"undue tendency to suggest decision on an improper basis." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

As the government explains, "A 'red flag' is simply a set of circumstances indicating a prescription or set of prescriptions may not be legitimate." (ECF No. 156, PageID.756.) Here, the red flags the government seeks to introduce at trial include "patients switching doctors, prescriptions being presented in 'groups,' the same controlled substances with high street value being prescribed repeatedly, the doctors not being located near the pharmacy, and paying cash (even though the 'patient' had insurance)." (*Id.*)

This evidence is clearly relevant under Fed. R. Evid. 401. It is, explains the government, "about the core obligation of a pharmacist—not to fill controlled substance prescriptions that are not legitimate." (ECF No. 156, PageID.756.) "Evidence that Defendant ignored red flags in filling suspicious prescriptions is relevant since the evidence tends to make it more probable that Defendant knew . . . [she] was filling prescriptions that did not serve a legitimate medical purpose or deliberately ignored signs indicating that the prescriptions did not serve such a purpose." *United States v. Nasr*, No.18-7, 2021 U.S. Dist. LEXIS 22264, at *6–7 (E.D. Ky. Feb. 5, 2021); *see also United States v. Noel*, No. 20-6167, 2021 U.S. App. LEXIS 33416, at *10 (6th Cir. Nov. 8, 2021) (finding red flag evidence permissible under Rule 404(b) because such evidence—prescriptions written for and filled by out-of-state patients, noninsurance payments at inflated prices, high doses of opioids, and patients traveling long distances to fill prescriptions—"'support[s] a reasonable

5

inference that the underlying prescriptions' were filled 'outside the usual course of professional practice.'" (citing *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020))).

Indeed, the Sixth Circuit has affirmed the use of red flag evidence in criminal cases on numerous occasions. *See Noel*, 2021 U.S. App. LEXIS 33416, at *6 ("red flag" evidence admitted to combat the defense that the pharmacist was duped by "slick" drug dealers); *United States v. Jones*, 825 F. App'x 335, 339 (6th Cir. 2020) (expert pharmacists testified defendant repeatedly ignored red flags such as frequent changes of prescribers, long-term combinations of pills, and payment in large amounts of cash); *United States v. Gowder*, 841 F. App'x 770, 777 (6th Cir 2020) (veteran police officer testified as expert about numerous red flags raised by a prescribing clinic); *United States v. Veal*, 23 F.3d 985, 988 (6th Cir. 1994) (per curiam) ("[T]he fraudulent character of the prescriptions should have been obvious to [defendant]. The government showed that several prescriptions were issued by a fictitious doctor, that several of the prescriptions were facially invalid, and that phone calls to the doctors named on the forged prescriptions would have uncovered the forgeries.").

Iwas' challenges to this evidence are not persuasive. Red flags do not have to be official rules to shed light, in a criminal case, on whether a pharmacist knowingly dispensed a fraudulent prescription or dispensed a prescription outside the scope of legitimate pharmacy practice. Nor has Iwas pointed to particular facts about Beacon Pointe Pharmacy that would make the red flag evidence unreliable. Thus, her

6

reliance on *Oak Hill Hometown Pharmacy v. Dhillon*, 418 F. Supp. 3d 124 (S.D. W. Va. 2019), is inapplicable. And any weaknesses or deficiencies in the red flag evidence, such as being in flux or varying throughout the state or country, goes to the weight of the evidence and not its admissibility. Because weighing the evidence is the province of the jury, these weaknesses are proper subjects of cross-examination. And the defense can propose limiting instructions regarding the proper scope of the evidence to further eliminate the potential for any prejudice or confusion.

Because red flag evidence is highly probative of the legitimacy of prescriptions and a pharmacist's knowledge thereof, its admission is not substantially outweighed by any unfair prejudice. Thus, the Court is not going to prohibit evidence about law enforcement techniques focused on the red flags or expert testimony opining on them.

More specifically, the government advises that qualified drug diversion investigators may testify about certain red flags and indicators of diversion, relevant regulations and procedures, and how they investigated the case. (ECF No. 156, PageID.760.) Iwas seeks to analogize this to "drug courier profiles" that courts have often excluded. (ECF No. 151, PageID.520–22.) But courts in this Circuit "have permitted law enforcement officers to testify about red flags or the particular characteristics of the illegal diversion of controlled substances." *United States v. Newman*, No. 19-59, 2021 U.S. Dist. LEXIS 46849, at *17 (E.D. Tenn. Mar. 12, 2021); *see also United States v. Stapleton*, No. 12-11, 2013 U.S. Dist. LEXIS 160442, at *12–13 (E.D. Ky Nov. 8, 2013) (finding that detective's testimony "will help the jury make sense of the evidence because average jurors are not equipped to spot the seemingly

7

innocent signs of a pill mill"). And the Sixth Circuit has allowed like testimony from drug diversion investigators. *See United States v. Perry*, 940 F.2d 664, 1991 WL 147466, at *2 (6th Cir. 1991) (unpublished table decision) (holding that diversion investigator could properly testify to the "modus operandi of illegal pharmaceutical drug trafficking" (citations omitted)); *United States v. Seelig*, 622 F.2d 207, 213–14 (6th Cir. 1980) (affirming DEA compliance officer could testify about "what the routine practices of pharmacists should be according to the regulations").

The case law, however, does appear to put some limits on the testimony. While it is proper for the government to introduce evidence about the indicators of a pharmacy operating illegally, such as red flags indicating controlled substances are being diverted, the witnesses should not testify that Beacon Pointe Pharmacy *meets* those characteristics. As Judge Thapar explained during his time as a district judge:

> When a law enforcement expert offers a "point by point examination of profile characteristics with specific reference" to the defendant, there is a particularly acute risk the jury will convict simply because the defendant fits the profile. Since the jury is competent to make the comparison in this case on its own, linking the traits of a typical pill mill to the defendants' clinic carries a significant risk of unfair prejudice without adding much probative value.

*Stapleton*, 2013 U.S. Dist. LEXIS 160442, at *19–21; *see also Newman*, 2021 U.S. Dist. LEXIS 46849, at * 18 (same); *United States v. Johnston*, 322 F. App'x 660, 667 (E.D. Mich. 2009) (permitting the use of red flag evidence to "show that [the pharmacist] failed to meet the required standard of care in dealing with her patients; not to show that [the pharmacist] somehow fit a specific criminal profile"). Thus, as requested by Iwas, law enforcement witnesses will not be permitted to testify that

8

Beacon Pointe Pharmacy fit the profile of a prescription drug diversion scheme. That is an issue for the jury to decide based on the evidence presented to them.

### III. Motion to preclude Paul Hammerly from discussing red flags or indicators of diversion and whether Iwas knowingly filled prescriptions outside the course of usual professional practice or with no legitimate medical purpose (ECF No. 151, PageID.523–31)

Next, the Court will turn to the government's pharmacy expert, who is the subject of a separate motion in limine by Iwas.

"Jurors, who are lay people from all walks of life, are unlikely to know when a pharmacist is authorized to manufacture, distribute, or dispense a controlled substance. Therefore, to carry its burden of proof, the Government will require the testimony of an expert in this field." *United States v. Ranochak*, No. 17-73, 2022 U.S. Dist. LEXIS 168467, at * 34 (N.D. Ind. Sept. 19, 2022).

Here, the government will be presenting testimony from pharmacy expert Paul Hammerly. The government advises that Hammerly has 25 years of experience in the pharmacy business as a pharmacist and a pharmacy manager. (ECF No. 156, PageID.759.) The Court has been provided a copy of his expert reports (ECF No. 153), but defense counsel has not requested a *Daubert* hearing. Thus, the Court will address the expert issues from the briefing.

"For expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable." *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). District courts perform "a gatekeeping

9

role in screening the reliability of expert testimony." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010).

Iwas is not directly challenging Hammerly's qualifications. His report identifies the materials he reviewed and the legal and regulatory standards he applied. He identifies the "red flags" he observed from his review of prescriptions, pharmacy data, and investigative reports, and opines on why they are indicative of Iwas acting outside the course of legitimate pharmacy practice. The Court has already ruled on the relevance of this red flag evidence. It has been given no reason why this review of materials and identification of red flags by someone with decades of experience in the pharmacy industry is an unreliable methodology. Again, "red flag" is not a scientific term of art. It is "a circumstance that raises a reasonable question as to the validity of a prescription." (ECF No. 156, PageID.757) (citing *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 821 (N.D. Ohio 2022)). The Court has already referenced Sixth Circuit cases allowing such evidence, including several that involved expert testimony. *See also United States v. Johnston,* 322 F. App'x. 660, 667 (11th Cir. 2009) (allowing expert testimony on red flags and rejecting many of the arguments raised by defendant here). So there is no basis for excluding Hammerly's testimony.

To provide further guidance, the Court will borrow from the opinion in *United States v. Ranochak*; there, with respect to the government's pharmacy expert, the court ruled:

> It is acceptable for Dr. Catizone to testify that the standard of care requires pharmacists to be licensed in the state in which they practice

10

> and to abide by the rules and regulations of the state. He can explain the steps a pharmacy would take to ensure that controlled substances dispense pursuant to a valid prescription or that those prescriptions dispense for a legitimate medical purpose. Dr. Catizone can testify that pharmacists can decline to fill prescriptions when the prescriptions lack legitimate medical purpose. He can state that pharmacists are not physicians and cannot diagnose patients. He can also talk about the compounding practices at the pharmacies, about the customary practice of keeping prescription records, and the "red flags" that the pharmacists must watch for to avoid dispensing controlled substances without medical justification. These opinions are relevant, based on sound methodology, and they do not present a risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time. However, in light of the requirements of *Daubert* and its progeny, the Court will not allow Dr. Catizone to testify about his opinions on legal matters, or tell the Jury what ultimate conclusions it should reach, or what Defendants' state of mind was when they worked at the Pharmacy.

*United States v. Ranochak,* 2022 U.S. Dist. LEXIS 168467, at \*36–38; *see also United States v. Gowder*, No. 17-25, 2019 U.S. Dist. LEXIS 3629, at \*10 (E. D. Ky. Jan. 2, 2019) ("The Court will not allow Dr. Rauck (or any expert) to testify to the subjective intent of another. Dr. Rauck may, within his expertise, address the propriety of conduct; he may not characterize Dr. Moore's mental state, or the orientation of his heart, relative to such conduct.").

The government also correctly points out that Sixth Circuit case law allows a qualified expert to testify that particular conduct lies outside the scope of legitimate medical practice—element two under § 841. They rely on *United States v. Anderson*, 67 F.4th 755, 766–68 (6th Cir. 2023), and *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015). (ECF No. 156, PageID.758.) The Court recognizes that those cases involve experts who were medical doctors. Nevertheless, courts that have addressed the issue have indicated that medical doctor testimony is not necessary to establish

11

a prescription is issued outside the usual course of professional treatment. *See, e.g.*, *United States v. Tran*, 609 F. App'x 295, 299 (6th Cir. 2015) (allowing an expert pharmacist to testify that defendant-physician's prescriptions raised ethical concerns such that he would have refused to fill them because "[the pharmacist's] training qualified him both to remark on the apparent invalidity of [the physician's] prescriptions and to explain the basis for his assessment—i.e., that the type and volume of [the physician's] prescriptions appeared to fall outside the scope of a podiatrist's practice"); *United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009) (upholding conviction of pharmacist based upon testimony of other pharmacists and DEA investigator because, given a pharmacist's legal duty not to knowingly fill prescriptions issued outside the usual course of medical practice under 21 C.F.R. § 1306.04(a), "it does not strain the imagination to think that some pharmacists might know and be qualified to speak about what it means for a prescription to be consistent or inconsistent with the usual course of medical practice").

Here, the government acknowledges that Hammerly cannot opine on the ultimate legal issue. The government states that Hammerly "will not be asked the ultimate legal issue of whether particular prescriptions were illegal, or if the defendant actually knew the prescriptions were invalid. But he can opine what a trained pharmacist should have known under particular circumstances." (ECF No. 156, PageID.760.) This is appropriate.

12

Accordingly, Paul Hammerly may testify about red flags or indicia of diversion as well as the usual course of pharmacy practice, but he may not opine as to Iwas' subjective knowledge or intent.

**IV. Motion to limit the government's use of MAPS data (ECF No. 151, PageID.534–43) and to preclude the government from presenting evidence of or arguing that MAPS data show a pattern (ECF No. 151, PageID.531–34)**

Next, Iwas makes several arguments as to why the government should be limited in its use of Michigan Automated Prescription Service (MAPS) data and data from the SRS Pharmacy Database.

The essence of Iwas' arguments is that the data is of questionable reliability and is unfairly prejudicial. She argues that MAPS and SRS data are irrelevant under Fed. R. Evid. 401 because they do "not *prove* whether Ms. Iwas had actual knowledge that any prescription was filled outside the usual course of professional practice or not for a legitimate medical purpose." (ECF No. 151, PageID.536 (emphasis added).)

This applies the wrong standard. The issue is whether the MAPS and SRS data is *probative* of knowledge or intent. Fed. R. Evid. 401(a). As reflected in Hammerly's report, this data is probative as to whether Iwas distributed controlled substances and whether the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose. And this probative value is not outweighed by substantial prejudice.

This includes MAPS data that show a pattern, which Iwas also challenges. Again, patterns in the data could tend to make Iwas' knowledge more likely than without it. And in similar cases, courts have allowed the admission of practice-wide

13

prescription data, especially on the issue of a defendant's intent. *See, e.g.*, *United States v. Kraynak*, 553 F. Supp. 3d 245, 258–59 (M.D. Pa. 2021); *United States v. Parker*, No. 19-40018, 2022 U.S. Dist. LEXIS 166877, at *16 (W.D. Ark. Sept. 15, 2022); *United States v. Moret-Quezada*, Case No. 15-20723 (E.D. Mich. Feb. 2, 2017), ECF No. 156.

The Sixth Circuit also recognizes the probative value of statistical evidence about prescribing patterns in controlled substances cases. *See, e.g., United States v. Kirk*, 584 F.2d 773, 778 (6th Cir. 1978) (admitting a survey of about 200 drug stores in one county which revealed an "unnecessarily large quantity" of controlled substances); *United States v. August*, 984 F.2d 705, 708 (6th Cir. 1992) (admitting evidence that a podiatrist's purchases of prescription cough syrup, a controlled substance, were "double those of the average United States pharmacy" and that he "purchased 99% or more of all the hydrocodone sold to podiatrists in Michigan" for three years); *United States v. Sadler*, 750 F.3d 585, 589 (6th Cir. 2014) (admitting evidence that a doctor was "the state's number one prescriber of hydrocodone . . . by a wide margin").

The Court recognizes that the admissibility of this type of prescription data often arises in the context of a Fed. R. Evid. 404(b) challenge. While Iwas is not making this argument, the cases are instructive. They explain how such prescription data can either fall outside Rule 404(b) as "res gestae" or background evidence that is "inextricably intertwined" with the charged offenses, or as permissible 404(b) evidence on the issue of knowledge, intent, and absence of mistake.

14

Here, as the government points out, Iwas is charged with being part of a conspiracy and operating a drug-involved premises over the course of many years. So it is not surprising that MAPS and SRS data over those years may reveal relevant patterns that could be considered proper background evidence or inextricably intertwined with the charged offenses. In other words, while the parties do not break down the data, the government's response suggests that much of it will pertain to and complete the story of the charged conspiracy or operation of a drug-involved premises. *See, e.g.*, *United States v. King*, 898 F.3d 797, 805 n.2 (8th Cir. 2018) ( "[T]here is no Rule 404(b) problem, as the [practice-wide prescription data] only contain[ed] prescriptions relating to the charged conspiracy."); *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998) (admitting a physician profile which showed abnormally high rates of billing for an expensive procedure in a fraud case because the evidence was part of a continuing pattern of illegal activity; "[The] fraud scheme involved filing claims and receiving payments. The profile introduced by the government provided the jury with evidence intrinsic to that scheme—the number of claims filed by Weinstock and the payments he received."); *United States v. Wells*, 211 F.3d 988, 999–1000 (6th Cir. 2000) (finding court did not abuse its discretion in admitting 171 prescriptions that were not specifically charged in the indictment as acts in furtherance of the alleged conspiracy and rejecting defendant's claims that "some of the prescriptions were legitimate and that the government simply lumped together numerous prescriptions"). At this time, without the benefit of having the data or

15

seeing the evidence in context, the Court does not see a strong argument to exclude it.

While Iwas does not raise a Rule 404(b) challenge, the Court will consider a possible limiting instruction that the evidence is allowed only to show Iwas' intent, knowledge, and absence of mistake in dispensing, or joining a conspiracy to dispense, controlled substances outside the usual course of professional practice.

In addition to challenging the substance of the prescription data, Iwas raises some procedural challenges to its admissibility. First, she contends that the government failed to preserve certain MAPS data showing patients' activities from other pharmacies that would be helpful to her defense. (ECF No. 151, PageID.537–39.) But this is not data the government ever had and so they did not fail to preserve it. (ECF No. 156, PageID.760–62.)

Next, Iwas raises "best evidence" rule challenges under Fed. R. Evid. 1001–08. The government contends that this case involves three separate sets of independent business records: the controlled substance prescriptions, SRS computer software records, and MAPS records. (ECF No. 156, PageID.763.) The government will use duplicate originals of the latter two so that there is no best evidence rule problem. (*Id.*) Those records will set forth what medications were dispensed at Beacon Pointe Pharmacy and when they were dispensed. Iwas does not provide any authority that, assuming the government establishes these are legitimate business records, such records are inadmissible without also having the underlying prescriptions. Also, to the extent there are missing prescriptions, the government explains they must not

16

have been at Iwas' pharmacy when the government executed the search warrant and seized all the controlled substance prescriptions. (*Id.* at PageID.765–67.) In other words, the MAPS and SRS data would be admissible under an exception in Fed. R. Evid. 1004(a)–(c) because "the defendant either has [the prescriptions], destroyed them or else they never existed. (*Id*. at PageID.766.)

One final note. To the extent Iwas has more specific objections about the scope and range of the prescription data being introduced, those will be addressed during the trial after the Court has more context. But because the essence of the government's argument for the admission of this data is its relevance to establish Iwas' alleged knowledge and conduct outside the scope of professional pharmacy practice, the government should be prepared to tie the data to times that Iwas would have been the filling and/or dispensing pharmacist. And, of course, Iwas will be free to bring out on cross-examination any deficiencies or weaknesses in the data.

Thus, the Court finds that MAPS and SRS data is admissible, including to illustrate patterns of prescribing.

### V. Motion to allow argument that the government did not revoke Iwas' DEA registration (ECF No. 151, PageID.543–45)

Lastly, Iwas wants the opportunity to rebut the suggestion that she acted inconsistent with "the public interest" or posed "an imminent danger to the public health or safety," by pointing out that the Drug Enforcement Administration had the authority under 21 U.S.C. § 824 to revoke or suspend her DEA registration yet failed to do so.

17

The Court agrees with the government that this evidence is not relevant and, to the extent it has any probative value, it is substantially outweighed by the risk of confusing the jury. As the government explains, "The DEA Administrator 'may,' but is not required, to bring an administrative action to revoke a pharmacy registration" under 21 U.S.C. § 824(a). (ECF No. 156, PageID.768.) And there are any number of reasons why the DEA may not have revoked Iwas' license—including not interfering or getting involved with an ongoing criminal investigation or a subsequent change in Iwas' conduct. (*Id.* at 769.)

As the Court ruled in *United States v. Ifediba*, addressing this very issue, "evidence that the DEA did not pursue administrative action against [the defendant pharmacist] at some point in time does not mean that he did not violate the Controlled Substances Act." No. 18-103, 2019 U.S. Dist. LEXIS 202027, at *13–14 (N.D. Ala. Nov. 21, 2019). And whether Iwas violated the Controlled Substance Act is the issue the jury should be focusing on.

## VI. Conclusion

For all of these reasons, Iwas' motions in limine are GRANTED IN PART AND DENIED IN MOST PART. Where appropriate, the Court will provide the jury with proper cautionary instructions. Based on this ruling, the parties should revise the limiting instructions proposed in their briefing and see if they can jointly agree on requested language.

SO ORDERED.

Dated: October 12, 2023

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES DISTRICT JUDGE